STATE ex rel. OKLAHOMA BAR ASSOCIATION v. WOODWARD
2022 OK 72
Case Number: SCBD-7269
Decided: 09/13/2022
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2022 OK 72, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

STATE OF OKLAHOMA ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,
v.
DAVID LUTHER WOODWARD, Respondent.
ORIGINAL PROCEEDING FOR ATTORNEY DISCIPLINE
¶0 The Oklahoma Bar Association instituted this reciprocal discipline proceeding pursuant to Rule 7.7 of the Rules Governing Disciplinary Proceedings, 5 O.S.2021, ch. 1, app. 1--A. Respondent attorney was found guilty of misconduct for violating multiple provisions of the Rules Regulating the Florida Bar Association. The Florida Supreme Court suspended Respondent from practicing law for a period of seventy-five days and placed him on probation for a period of two years. As reciprocal discipline, Respondent is suspended for a period of seventy-five days, to commence on the filing of this decision.
RESPONDENT SUSPENDED FOR SEVENTY-FIVE DAYS
Tracy Pierce Nester, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant
GURICH, J.
¶1 David Luther Woodward was admitted to the Oklahoma Bar Association (OBA) in 1981. Woodward was also licensed by the Florida Bar in 1979, and he maintained his law practice in Pensacola. Reverend Barbara Simmons initiated a grievance against Woodward in connection with his representation of Simmons in a partition case in Escambia County Florida. On April 14, 2022, the Florida Supreme Court issued an order suspending Woodward from the practice of law. We must now determine what reciprocal discipline, if any, to impose.
Facts and Procedural History
¶2 Simmons' mother died a resident of Pensacola, Florida in Escambia County. The decedent owned a home, which she left to her eight children via testamentary instruments. One of the siblings, Dwayne Simmons, had been living in the home for approximately three years, and he refused to leave. Simmons commenced a pro se action to partition the residence on Mary 25, 2018. After Simmons ran into difficulty conducting the litigation pro se, she retained Woodward to represent the group of siblings in the civil suit. Simmons paid Woodward a total of $1,250.00 in two installments to represent a retainer fee. Woodward entered an appearance in the case; he also sought leave to amend the pro se complaint, and later requested a new trial date, both of which were granted.
¶3 Woodward neglected to notify Simmons and her siblings of the re-scheduled date for trial proceedings. In fact, after the initial consultation, Woodward failed to reply to any of the clients' communication regarding the case. On September 25, 2019, neither Woodward nor the clients appeared for trial proceedings. A judicial assistant contacted Woodward to ascertain his whereabouts and he informed the trial court that he failed to appear because opposing counsel failed to comply with discovery and a directive to appear for mediation.
¶4 The trial judge issued a directive to Woodward, ordering him to show cause on or before September 27, 2019, and answer (1) whether his clients' action should be dismissed without prejudice; and (2) whether Woodward and/or his clients should be assessed a sanction of attorney fees for failing to appear. It further directed Woodward to provide a copy of the show cause order to the clients. Woodward failed to respond to the judge's order and failed to deliver the order to his clients. On October 4, 2019, the trial judge issued a second show cause order, directing Woodward to respond on or before October 11, 2019. The order directed Woodward to serve his clients with the second order. Once again Woodward did not provide a response to the order or notify the clients; however, he did request to appear before the circuit court to provide a verbal response.
¶5 On October 10, 2019, Woodward appeared before the Escambia County judge to explain his nonappearance at trial and noncompliance with the show cause orders. Woodward advised the trial judge that he did not properly calendar the date. When questioned about service of the show cause orders on his clients, Woodward provided no substantive response; instead, he simply excused his disregard by shifting responsibility to the local court clerk for serving papers on pro se litigants. The following day, the trial court issued an order dismissing the case without prejudice, wherein the judge noted:
Mr. Woodward's comment that this case is ripe for summary judgment is off point. It does not explain his willful failure to appear at trial. It does not explain his failure to respond with [sic] the first order to show cause. It does not explain his failure to comply with either order to show cause to alert his clients that his decision not participate in the trial might result in the case being dismissed. And while this court has concern regarding the impact of [sic] the plaintiffs based on the actions or inactions of their counsel, this Court is attuned to the speedy, just and inexpensive disposition of actions and the expense as it relates to the defendant and his counsel.
Moreover, the trial judge conditionally sustained the defendant's motion for attorney fees (subject to submission of an affidavit from defendant's attorney). Simmons and her siblings were forced to retain a different attorney, who filed a new partition action on their behalf.
¶6 Simmons submitted a bar complaint in November 2019. The Florida Bar sent a letter to Woodward on November 15, 2019, requesting a response to Simmons' allegations. Woodward did not provide an answer to the complaint until July 2020. Later that year, the Florida Bar filed a formal complaint against Woodward and assigned the case to a referee for issuance of factual and legal findings. On January 24, 2022, the referee filed a formal report with the Florida Supreme Court. Therein, the referee concluded Woodward had violated the following Rules Regulating the Florida Bar: 4-1.3 (diligence); 4-1.4 (communication); 4-3.2 (expediting litigation); 4-3.4(c) (knowingly disobey an obligation under the rules of a tribunal); 4-8.4(d) (conduct prejudicial to the administration of justice); and 4-8.4(g) (failure to respond to the Florida Bar).
¶7 Included in the report were findings relating to aggravating and mitigating factors, which are used in assessing the appropriate level of discipline for ethical violations in Florida. Aggravating factors found by the referee included: (1) a pattern of misconduct; (2) multiple rule violations; (3) vulnerability of the victims; and (4) lengthy experience as an attorney. In mitigation of the rule violations, the referee pointed to: (1) the absence of any prior discipline; (2) lack of a selfish or dishonest motive; (3) restitution to the victims by refunding legal fees ($1,250.00); (4) Woodward's good character and reputation; (5) mental health problems were a contributing cause of the violations; and (6) Woodward expressed remorse for his misconduct.
¶8 The referee recommended a seventy-five-day suspension, together with a two-year probationary term. In addition, the referee suggested Woodward should attend a professionalism workshop and submit to an evaluation by Florida Lawyers Assistance, Inc. (FLA). The referee urged that Woodward should be required to follow any recommendations made by FLA and would be subject to their monitoring of his probation. On April 14, 2022, the Florida Supreme Court issued an order approving the referee report in toto. Effectiveness of the Florida Supreme Court order, however, was tolled for a period of thirty days to allow Woodward to "close out his practice and protect the interests of existing clients."
¶9 Woodward sent a letter to the Oklahoma Bar Association, notifying the body that his Florida license had been suspended per the April 14, 2022 order. Although dated May 11, 2022, the postmark reflects processing by the U.S. Postal Service on May 16. An OBA stamp reflects the letter was received on May 19. On June 7, 2022, the OBA filed a notice with this Court advising of the Florida disciplinary action. The OBA also provided notice of Woodward's suspension by the U.S. Court of Appeals for the Federal Circuit, based solely on the discipline in Florida. In a separate filing, the OBA recommends we impose a similar suspension of seventy-five days. By order dated June 8, 2022, this Court directed Woodward to show cause and/or request a hearing concerning final discipline in Oklahoma on or before June 29, 2022. The order further authorized Woodward to submit any additional information relating to or in mitigation of reciprocal discipline in this State. To date, Woodward has not answered the show cause order or provided any written materials concerning the disposition of this matter.
Standard of Review
¶10 This Court is vested with exclusive, original, and nondelegable jurisdiction over attorney-discipline cases. State ex rel. Okla. Bar Ass'n v. Hart, , ¶ 6, , 898. As we have announced in numerous decisions, "[t]he ultimate responsibility for deciding whether misconduct has occurred and what discipline is warranted if misconduct is found rests with [this Court] in the exercise of our exclusive original jurisdiction in bar disciplinary matters." State ex rel. Okla. Bar Ass'n v. Cox, , ¶ 10, , 1008 (quoting State ex rel. Okla. Bar Ass'n v. Taylor, , ¶ 2, , 21) (alteration in Cox). We must ensure the OBA has established charges of misconduct by clear and convincing evidence. State ex rel. Okla. Bar Ass'n v. Mansfield, , ¶ 14, , 113. As in other bar-disciplinary matters, we review each aspect of a Rule 7 proceeding de novo. State ex rel. Okla. Bar Ass'n v. Cooley, , ¶ 4, , 454.
Discipline
¶11 An attorney disciplined in another jurisdiction, is subject to reciprocal discipline in Oklahoma according to the terms outlined by RGDP Rule 7.7. This provision reads:
(a) It is the duty of a lawyer licensed in Oklahoma to notify the General Counsel whenever discipline for lawyer misconduct has been imposed upon him/her in another jurisdiction, within twenty (20) days of the final order of discipline, and failure to report shall itself be grounds for discipline.
(b) When a lawyer is the subject of a final adjudication in a disciplinary proceeding, except contempt proceedings, in any other jurisdiction, the General Counsel of the Oklahoma Bar Association shall cause to be transmitted to the Chief Justice a certified copy of such adjudication within five (5) days of receiving such documents. The Chief Justice shall direct the lawyer to show cause in writing why a final order of discipline should not be made. A written response from the lawyer shall be verified and expressly state whether a hearing is desired. The lawyer may in the interest of explaining his or her conduct, or by way of mitigating the discipline to be imposed upon him or her, submit a brief and/or any evidence tending to mitigate the severity of discipline. The lawyer may submit a certified copy of any transcripts of the evidence taken during disciplinary proceedings in the other jurisdiction to support his/her claim that the finding therein was not supported by the evidence or that it does not furnish sufficient grounds for discipline in Oklahoma. The General Counsel may respond by submission of a brief and/or any evidence supporting a recommendation of discipline.
(c) Certified copies of the documents shall constitute the charge and shall be prima facie evidence the lawyer committed the acts therein described.
(d) The Oklahoma Supreme Court may refer the matter for additional evidentiary hearing(s) before the Professional Responsibility Tribunal if the Court deems such hearing(s) necessary.
Therefore, the Supreme Court of Florida's April 14, 2022 order suspending Woodward represents (1) the charge in Oklahoma for ethical violations committed by the attorney, and (2) clear and convincing evidence that the act(s) occurred. State ex rel. Okla. Bar Ass'n v. Kutner, , ¶ 2, , 372; RGDP Rule 7.7(c).
¶12 In its brief concerning the appropriate level of discipline, the OBA maintains that Woodward violated Oklahoma Rules of Professional Conduct 1.3 (diligence), 1.4 (communication with client), 3.2 (expediting litigation), 8.4(a) (violation of ORPC generally), and 8.4(d) (conduct prejudicial to administration of justice). Additionally, the OBA suggests Woodward violated RGDP 1.3 (acts contrary to standards of conduct), 5.2 (failure to respond to grievance), and 7.7 (failure to timely notify the OBA of discipline in another jurisdiction). We concur with the OBA's assessment of Woodward's professional misconduct under Oklahoma's ORPC and RGDP with the exception of RGDP Rule 7.7(a).
¶13 Under RGDP Rule 7.7(a), Woodward was required to notify General Counsel of the OBA within twenty days of the final order of discipline. The Supreme Court of Florida filed its order suspending Woodward on April 14, 2022; however, it was not effective until May 14, 2022. Woodward sent his notification via U.S. Mail on May 16, 2022, and our record indicates the OBA received Woodward's correspondence on May 19, 2022. Although it might have been better practice to alert the OBA within twenty days of the filing of the order, we do not believe the record presents clear and convincing evidence Woodward disregarded his obligation to promptly inform the Bar of discipline in another jurisdiction.
¶14 In a reciprocal disciplinary proceeding, "it is within this Court's discretion to visit the same discipline as that imposed in the other jurisdiction or one of greater or lesser severity." State of Okla. ex rel. Okla. Bar Ass'n v. Patterson, , ¶ 33, , 561. Our primary goal is to safeguard the interest of the public, the judiciary, and the legal profession, while trying to deter similar future misconduct by other attorneys. State ex rel. Okla. Bar Ass'n v. Kleinsmith, , ¶ 4, , 1250. To determine what measure of discipline is proper, we are guided by discipline imposed upon other lawyers for similar acts of professional misconduct. Id.
¶15 As noted, a seventy-five day suspension, plus up to two years of supervised probation, was the discipline imposed on Woodward in Florida. After reviewing prior decisions of this Court, we believe the most analogous case, not involving reciprocal discipline, is State ex rel. Okla. Bar Ass'n v. Benefield, , . In Benefield, the attorney had accepted retainer fees in three different cases, but neglected to perform the work for which he was hired. Refunds were requested by two of the clients, but the attorney did not return any monies until a formal disciplinary proceeding had been filed and presented to the Professional Responsibility Tribunal. During the OBA's investigation into the three client grievances, Mr. Benefield wholly failed to cooperate with the process. We concluded the record demonstrated misconduct and violations of ORPC 1.1, 1.3, 1.4, 1.5, 1.16(d), and 8.1; it was also a violation of RGDP 5.2. Id. ¶ 12, 51 P.3d at 1200. The attorney was subject to one prior disciplinary case, which resulted in a private reprimand. Id. ¶ 15, 51 P.3d at 1201. In the end, we determined a suspension of sixty days was the appropriate level of discipline. Id. See also, State ex rel. Okla. Bar Ass'n v. Boone, , (suspending attorney for six months for neglecting cases and failing to communicate with a client; attorney had received two prior private reprimands); State ex rel. Okla. Bar Ass'n v. Brewer, , (issuing public censure to attorney for neglecting client matters and failing to cooperate with the OBA).
¶16 The aforementioned cases involved original disciplinary adjudications by this Court for ethical violations occurring in Oklahoma. In State ex rel. Okla. Bar Ass'n v. Knight, , , we considered reciprocal discipline for misconduct arising out of the attorney's membership in the Texas Bar. In the Texas proceeding, a panel determined that Mr. Knight had neglected to perform legal services for which he was hired, and had failed to comply with client requests for information relating to the case, including surrendering client documents after termination of the relationship. Id. ¶ 3, 330 P.3d at 1218. The panel concluded Mr. Knight's transgressions were violations of multiple provisions in the Texas Disciplinary Rules of Professional Conduct. Id. ¶ 2, 330 P.3d at 1218. An order was issued in October 2013, placing Mr. Knight on a one-year probated suspension. Id. After reciprocal proceedings commenced in Oklahoma, this Court directed Mr. Knight to file a written response to the OBA's demand for discipline, but he failed to respond. Id. ¶ 4, 330 P.3d at 1218. Mr. Knight had been the subject of a prior Texas disciplinary case for neglecting client matters in 2009. Id. ¶ 8, 330 P.3d at 1219. Mr. Knight did not report the 2009 Texas ruling to the OBA; it was discovered only after the State Bar of Texas reported the disciplinary matter to the OBA. Id. The Oklahoma Professional Responsibility Tribunal issued a private reprimand as reciprocal discipline. Id. We concluded the appropriate level of discipline was suspension for one-year. Id. ¶ 15, 330 P.3d at 1221. To reach this conclusion, this Court emphasized two important facts: (1) Mr. Knight's two disciplinary cases both involved neglect of client matters and failure to communicate with those clients, thereby reflecting a pattern of malfeasance; and (2) Mr. Knight failed to respond to the Court's show cause order and did not answer the OBA's report regarding prior discipline in Texas. Id. ¶¶ 12-13, 330 P.3d at 1220-21. Woodward has not been the subject of prior disciplinary actions, thus Knight is distinguishable in part. However, Woodward's failure to participate in this reciprocal disciplinary case does indicate a pattern of apathy in both the Florida and Oklahoma disciplinary cases, and disdain for this Court's authority to regulate the legal profession.
¶17 Although we use our prior decisions as a gauge for imposing attorney discipline, the particular facts and circumstances of each case will dictate its resolution. Hart, , ¶ 15, , 900. The record reflects clear ethical violations by neglecting legal matters and failing to communicate with clients. Most troubling to the Court is Woodward's failure to cooperate during the Florida Bar investigation. He also did not respond to this Court's show cause order. Notwithstanding, Woodward is a senior member of the OBA, having been licensed in 1981. He has never been subject to disciplinary action in this state. Woodward made restitution to his former clients by returning retainer fees paid for representation in the underlying Florida trial court case. Considering the totality of the circumstances, Woodward's misconduct warrants suspension for a period of seventy-five days, effective on the day of filing this Court's opinion.
RESPONDENT SUSPENDED FOR SEVENTY-FIVE DAYS
EFFECTIVE SEPTEMBER 13, 2022
DARBY, C.J., KANE, V.C.J., KAUGER, WINCHESTER, EDMONDSON, GURICH, ROWE, AND KUEHN, JJ., CONCUR;
COMBS, J., DISSENTS.

COMBS, J., DISSENTING:
"I WOULD SUSPEND FOR SIX MONTHS."

FOOTNOTES
 Florida Standards for Imposing Lawyer Sanctions, Standards 3.2 and 3.3 (West 2022).
 Order of Fla. Sup. Ct., Case No. SC20-1842 (Apr. 14, 2022).
 5 O.S.2021, ch. 1, app. 3-A.